*(margin note: Nutter et al. vs Connet et al. appointed, if they be not competent and of good character.)*

---

## Nutter *et al. vs* Connet *et al.*

APPEAL AND WRITS OF ERROR TO THE JESSAMINE CIRCUIT.

*Chancery.    Attachment.    Lien.    Priority of lien.*

CHIEF JUSTICE ROBERTSON delivered the opinion of the Court.

On the night of the 9th of January, 1839, William C. Connet, who resided near Lexington in this state, started, with his family and several slaves and other moveables, for Missouri, with the intention of permanently settling there.    On the next day, (10th,) William Nutter, Clement Nutter, Robert Nutter, James Nutter, Thomas C. Sprake, Robert Carrick, and Reubin Houghton, as separate creditors of Connet, filed their several bills in Chancery for attaching four slaves left by him in the possession of Thomas C. Graves ; his dwelling, with about 20 acres of appurtenant land, under the care of his half brother, Benjamin C. Blincoe, and any other property belonging to him.    Each of these bills alledged, substantially, that Connet was secretly removing from the State with a por-

*(margin:)* CHANCERY.

Case 60.

*October* 20.

The case stated.

tion of his property, and intended to remove or otherwise dispose of his whole estate, for the purpose of delaying and defrauding his creditors. Attachments issued on those bills, were levied the same day, (10th,) on the land and four slaves, and *subpœnas*, with injunctions, were, at the same time, served on Graves, who was made a defendant.

Blincoe and one Spur, claiming to be creditors also of Connet, pursued and overtook him at Louisville, on the 12th of January, 1839, when and where Blincoe obtained a mortgage on the house and ground near Lexington, and Spur procured an assignment of some promissory notes held by Connet on persons in Fayette, but not then due. And on the 4th of February, 1839, some notes, among which were those assigned to Spur, and left by him in the hands of his lawyer, were also attached, on amended bills filed by the said seven creditors, and also on a bill filed by Blincoe on the 21st of January, and another by Thomas C. Waters, as another creditor of Connet, on the 28th of January. Spur and Graves being made defendants, made their answers cross bills; Spur claiming a prior right to the notes which had been assigned to him, and Graves insisting on an antecedent equity in the slaves in his possession, resulting from an alledged deposite of them with him, as a security for his own indemnity as Connet's surety for about $1750, to one McMurtry.

All parties having interpleaded, and all the attached property having been converted into money, the cases were consolidated and heard together as one case. And the Circuit Judge, being of the opinion that the seven first attachments were void or otherwise ineffectual, dismissed all the bills in those cases, decreed to Blincoe the proceeds of the house and ground, to Spur the amount of the notes which had been assigned to him, to Graves the amount of his liability for Connet, (and which he had then discharged by payment,) and distributed the residue of the attached fund between Waters and Blincoe.

Houghton has appealed, and the other parties, whose bills were dismissed, have prosecuted writs of error.

The Circuit Court must have dismissed the bills in consequence of an opinion, either that the allegations were

Insufficient to give jurisdiction, or that sufficient bonds had not been executed. These two questions will, therefore, be first considered in the order in which they have been stated.

1. As no one of these bills alledges that Connet had either left Kentucky to avoid ordinary process or been absent during one term of the Fayette Circuit Court, or was in fact a non-resident, they were all insufficient as attachment bills, unless they can be sustained under the statute of 1838, (*Loughborough's Digest*, 116,) because one of those allegations, verified by oath, is required by the act of 1837, (*Ib.* 12,) as indispensable to an attachment of the property of non-residents or absent defendants; and moreover, when the bills were filed, Connet was neither absent from nor a non-resident of Kentucky.

But under the act of 1838, *supra*, the allegations were, in our judgment, sufficient to authorize the attachments, as issued and levied. Were it even admitted that there is no conclusive or satisfactory proof of Connet's intention either to remove or otherwise dispose of the property left-behind him, to the prejudice of any of his creditors, still the fact that he was himself escaping from the jurisdiction of Kentucky, and carrying with him a portion of his estate, without leaving enough to satisfy the demands of his creditors, would alone be sufficient to authorize the attachment of *any* or *all of his property*, under the third section of the said act of 1838: *Montgomery* vs *Tilley et al*, (1 *Ben. Monroe*, 155.) And this fact is not only, in effect, alledged in all the bills, charging an intention to defeat or embarrass creditors, but is also clearly established. Besides, were such a presumption necessary, we apprehend that the Court might be authorized to presume that Connet did, in fact, intend to dispose of all his property in such a manner as unlawfully to delay, embarrass, or defeat his attaching creditors.

2. Nor can we admit that the alledged insufficiency of the attachment bonds should prevent or impair the liens resulting from the levying of the attachments. The fourth section of the act of 1838, requires a bond in a "sufficient penalty," to be executed before the Clerk, antecedently to the issuing of an attachment, for securing to the owner

Nutter *et al.*
vs
Connet *et al.*

Under the statute of 1838, sec. 3, (*Loughborough's Digest*, 116,) the allegation that a party is escaping from the state, & conveying away a portion of his property, not leaving enough to satisfy the demands of creditors, is sufficient to authorize an attachment against *any or all* the property of a debtor.

Bonds of indemnity given on awarding an attachment by the chancellor, may be good though not conforming literally to the words of the stat.

NUTTER *et al.*
*vs*
CONNET *et al.*
_____
ute; but if not
good, the attach-
ment is not there-
fore void, and
sufficient bond
may be given.

of the property to be attached, all costs and damages which he "shall sustain by reason of the wrongful issuing of the order." The condition of each of the bonds, which were executed in a sufficient penalty in the cases dismissed by the decree, was that the obligors would pay to Connet all such costs and damages as might accrue to him *in consequence* of a dissolution of the *injunction* or a *dismission of the bill.* And although this condition does not literally correspond with that which the statute prescribes, yet, as the proceeding was altogether *in rem,* and therefore, each bill on which the attachment could not be maintained should, of course, be dismissed, or the injunction dissolved, a state of case could scarcely arise in which Connet could be entitled to costs or damages before either a dissolution of the injunction or a dismission of the bill; and, in the event of any such dissolution or dismission, he would be entitled to recover, on the bond as executed, all costs and damages which he had sustained "by reason of the *issuing of the order*" of attachment—for though such costs and damages might not arise *from* the dissolution or dismission, yet the right to recover them would be a consequence of such dissolution or dismission. But if the bonds be, in any respect, essentially deficient, still that circumstance only subjected the attachments to quashal, unless, on making objection to the condition, there had been an offer to supply the defect, which did not retroact so as, *per se*, to make the attachment or the levy of it void, or to destroy the lien resulting therefrom, but only subjected them to a potential avoidance on a future contingency.

Moreover, even the want of any bond could have had no effect on any other lien than that on the land—for, as to all the other property, there was a *lis pendens* from the instant when the *subpœnas* were served on the persons in possession. But, as to the land, there being no such service of *subpœna*, the levy of the attachment was necessary to place the land under the control of the Court or create a lien upon it; and, therefore, if the attachments had been void the levying of them would not have operated as a lien or have given those attaching creditors priority over Blincoe's subsequent mortgage.

The attachments, however, not being void, the levying of them created liens on the land as well as on the other property.

3. But although Graves' allegation as to the pledge of the four slaves to himself, for his own indemnity first, has not been conclusively or even very satisfactorily established, yet it is intrinsically rather probable; and we are, therefore, inclined to concede to him a prior lien resulting from the bailment to him.

And the assignment of notes to Spur being apparently *bona fide*, and prior to any effectual attachment of them by any of the attaching creditors of Connet, there seems to be no error in the decree in his favor, unless his debt has been discharged by his attachment at Louisville or otherwise.

Those notes were not, in fact, attached, nor was there, by service of process, any *lis pendens* respecting them until February after the date of the assignment of them to him.

But so far as Blincoe and Waters are concerned, the consequence of our decision as to the validity of the attachments of the parties now complaining in this Court is, that the decree cannot be sustained.

Blincoe does not appear to have had any available lien on the land or any other property of Connet, prior to the date of his mortgage on the 12th of January, 1839. No such lien resulted from the fact of leaving the land to his care and in his possession, consequently the prior attachment liens on the land should prevail against him.

4. As between the attaching creditors, it is our opinion that the first levy gave the prior lien. There is not a perfect analogy between an original process of attachment and an execution of *fi. fa.* In an original proceeding *in rem*, there can, we think, be no lien on the thing proceeded against until, by judicial service, there shall be a *lis pendens* or a caption of the specific thing. Before such service or levy, a *bona fide* sale by the owner of the thing sought to be subjected ought not to be disturbed or questioned. His alienee should not be deemed a purchaser, *pendente lite*, in any just, consistent, or disabling sense.

---

*Margin notes:*

NUTTER *et al.*
*vs*
CONNET *et al.*

The levy of attachment on land creates a lien for the benefit of the complainants.

As between several attaching creditors, the first levy gives the prior lien—But in proceeding *in rem*, there can be no *lien* until by judicial service there shall be a *lis pendens*, or a caption of the specific thing.

As between cred-
itors whose at-
tachments are
all levied at the
same time, there
shall be distribu-
tion *pari passu.*

But the creditors whose attachments were levied at the same time, will, of course, be entitled to distribution, *pari passu*, if there be a deficit in the proceeds of the property thus attached by them at the same time.

5. Houghton, whose lien on choses in action was co-temporaneous with that of all the other attaching creditors, will therefore, be entitled to a distributive portion of that fund, so far as, after deducting the amount to which Spur may be entitled, it may be subject to *pro rata* distribution among all those who attached it—though it may be that, as his levy on the land and slaves was posterior to that of several others, nothing of those two last funds may be left for him.

6. But, as both Blincoe and Spur seem to have attached property of Connet at Louisville, on the 12th of January, 1839, there ought to be some inquiry or agreement as to the results of those attachments, before they should be permitted to obtain any portion of the property attached in this case.

Wherefore, at the instance of all the parties now seeking a reversal in this Court, the decree is reversed and the cause remanded.

*Robinson & Johnson and Hickey* for Nutters, Sprake, and Carrick: *Owsley & Goodloe* for Houghton: *Pindell* for Graves, Blincoe, and Taylor: *Sayre* for Spur.